503 A.2d 734

**Terry Lang DILLSWORTH**

v.

**STATE of Maryland.**

**No. 339, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 5, 1986.

Certiorari Granted May 23, 1986.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Valerie W. Loftin, Asst. Atty. Gen., Baltimore, Robert W. Hamilton, State's Atty. for Allegany County and Barry R. Levine, Asst. State's Atty. for Allegany County, on brief, Cumberland), for appellee.

Submitted before ADKINS and ALPERT, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ALPERT, Judge.

According to Wendy Sue Tabler, the one-time live-in girlfriend of the appellant, Terry Lang Dillsworth, they had known each other about three years, and appellant had sired two of her three children. Shortly before September 15, 1984, Dillsworth decided that he was no longer going to live with Wendy Sue Tabler, but would take up future residence with one Mary Huffman. On the evening of September 15, 1984, appellant went out socially with Mary Huffman. Wendy Tabler, not to be left in the lurch, dated a man she had just met from Frostburg. She returned home about 10:30 the next morning. At about 7:30 p.m. on September 16, 1984, appellant and Mary Huffman returned to the Tabler abode, and as soon as appellant came in, "he started yelling at [Tabler] for not picking the kids up...." He began kicking and striking her, and Tabler described the attack as follows:

> Q. You say he attacked you. What did Mr. Dillsworth say and do at that time?
>
> A. He told me that if I wanted to f--k around he would rip my [vagina] out.

Q. What did he do after he said that?

A. He put his hand inside me and started to pull and tear at me.

Q. How long did that go on for, Miss Tabler?

A. Just about a minute.

A doctor, who had examined Ms. Tabler that same evening, testified to the extent of her injuries, which included a six centimeter-long, one centimeter-deep laceration inside the vagina (which was still bleeding during the examination and required sutures).

On January 23, 1985, a jury in the Circuit Court for Allegany County (Leasure, J., presiding) found appellant guilty of assault with intent to maim, third degree sexual offense, fourth degree sexual offense, and assault and battery. On March 20, 1985, he was committed to the custody of the Commissioner of Corrections for consecutive terms of five years for assault with intent to maim and two years for third degree sexual offense. Noting a timely appeal, appellant asserts that:

I. The evidence was insufficient to sustain appellant's convictions.

II. His sentence for third degree sexual offense should have been merged with his conviction for assault with intent to maim.

III. The court erred in denying appellant's suggestion for removal.

IV. Appellant's sentence was based in part on impermissible considerations.

## I.

In reviewing whether evidence is sufficient to support a criminal conviction by a jury, the oft-repeated test is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1974)). Here, appellant argues that the evidence was insufficient to show that he possessed the requisite specific intent to commit either an assault with intent to maim or an unlawful sexual contact. Each of these crimes will be examined in turn.

## A. *Assault with Intent to Maim, Disfigure or Disable*

Article 27, § 386 of the Annotated Code of Maryland (1982 Repl.Vol.) provides, in pertinent part:

[A]ny person [who] ... shall unlawfully and maliciously stab, cut or wound ..., or shall assault or beat any person, *with intent to maim, disfigure or disable* such person ... shall be guilty of a felony....

(Emphasis added).

At the close of the defense's case below, appellant's counsel moved for a judgment of acquittal "on the grounds [that] there is insufficient evidence to establish the intent to commit such a crime."

As no argument was made below on this precise issue, it is not preserved for our review. *See Lyles v. State,* 63 Md.App. 376, 492 A.2d 959, *cert. granted,* 304 Md. 362, 499 A.2d 191 (1985).[1]

## B. *Third Degree Sex Offense*

An essential element of a third degree sexual offense is proof that "the person engages in sexual contact." Maryland Ann.Code, Art. 27, § 464B (1982 Repl.Vol.). Appellant contended below that there was insufficient evidence

---

1. Even if the issue were preserved, we would still hold that there was sufficient evidence to submit to the jury.

    The testimony of Ms. Tabler, *supra,* of and by itself was sufficient to support an inference that appellant had the specific intent "to ... disable" her when he put his hand in her vagina and "started to pull and tear" at her. His verbal threats and success in carrying out this vaginal assault, together with the injuries described by the examining physician, lend support to the jury's finding. *See Jenkins v. State,* 59 Md.App. 612, 617, 477 A.2d 791 (1984). *See also People v. Page,* 104 Cal.App.3d 569, 163 Cal.Rptr. 839 (1980).

to support a conviction under § 464B, because there was no showing that appellant's actions vis-a-vis the victim's vagina constituted "sexual contact." Section 461(f) of Article 27 in pertinent part states:

"Sexual contact" as used in §§ 464B and 464C, means the intentional touching of any part of the victim's ... genital areas ... *for the purposes of sexual arousal or gratification or for abuse* of either party and includes the penetration, however slight, by any part of a person's body, other than the penis, mouth or tongue, into the genital or anal opening ... if that penetration can be reasonably construed as being *for the purposes of sexual arousal or gratification or for abuse of either party.*

(Emphasis added).

Defense counsel, in seeking judgment of acquittal on the charge of third degree sex offense, essentially argued that there was no evidence that the alleged acts involved an effort for sexual arousal or gratification on the part of the defendant. The trial judge, in denying the motion, seems to have equated the words "for abuse" as contained in the statute, with a physical attack intended to inflict *sexual injury.*[2] We agree with that construction, for we do not believe that the physical attack need be intended "for the purpose of sexual arousal or gratification" of either party.

On appeal, the appellant takes a different approach. He now contends that any sexual contact was purely accidental, and was not intended "for the purpose of sexual arousal, gratification or for abuse as required under Art. 27, § 461(f)." As this theory was not advanced below, it is not preserved for our review. *See Dempsey v. State,* 24 Md. App. 8, 330 A.2d 204 (1974), *rev'd on other grounds,* 277 Md. 134, 355 A.2d 455 (1976). *See also Chertkof v. Dep't of Natural Resources,* 43 Md.App. 10, 19, 402 A.2d 1315 (1979), *cert. denied,* 286 Md. 745.

---

**2.** We, of course, mean injury to those parts of the victim's body referred to in Art. 27, § 461(f) with the intent to cause an adverse sexual effect to one or more of those parts.

Even if appellant's trial theory had been preserved for our review, he would not prevail, because the evidence was sufficient to sustain a conviction of "abuse" under our construction of the statute. Because the term "abuse" as used in the statute admits of more than one definition, statutory construction is necessary. *See State v. Fabritz,* 276 Md. 416, 421–22, 348 A.2d 275 (1975). We note that, when statutes are revised, codified or otherwise reenacted, the new enactment will be given the same construction as the original statutes unless some substantial change in wording indicates a different intention. *See Springle v. Cottrell Engineering Corp.,* 40 Md.App. 267, 391 A.2d 456 (1978). We must recognize, however, that the legislature, in enacting chapter 573, Laws of 1976, sought to reform and modernize Maryland's antiquated sex offense laws. *See Rape and Other Sexual Offense Law Reform in Maryland,* 7 U.Balt.L.Rev. 151 (1977). Section 461(f) is unlike any of its ancestors. As we have stated so often, and most recently in *Simms v. State,* 65 Md.App. 685, 501 A.2d 1338 (1986):

> The cardinal rule of statutory construction is, of course, to ascertain and effectuate the actual legislative intention. No construction is required where the statutory provisions are unambiguous. Where a statute, however, is plainly susceptible of more than one meaning, construction is required. Under those circumstances we must consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. *State v. Intercontinental, Ltd.,* 302 Md. 132, 137 [486 A.2d 174] (1985).

Prior to the enactment of § 461(f) (ch. 573, Laws of 1976), the term "abuse," as it related to sex offenses, could be found only in a statutory rape statute that in part provided:

> If any person shall *carnally know and abuse* any woman child under the age of fourteen ... or any woman who is an imbecile, non compos mentis or insane, of any age whatever, every such carnal knowledge shall be deemed a felony....

Maryland Ann.Code, Art. 27, § 462 (1971 Repl.Vol., repealed by ch. 573, Laws of 1976) (emphasis added). In those jurisdictions where the phrase "carnal knowledge and abuse" has been construed, courts have consistently held "abuse" to be synonymous with a wrongful or defiling sexual touching, but distinguishable from a mere physical injury which is the result of a malicious attack. *See, e.g., State v. Ferris*, 81 Conn. 97, 70 A. 587 (1908) ("abuse" should not be construed independently from "carnal knowledge" and requires proof of injury to the genital organs); *Commonwealth v. Nadolny*, 163 Pa.Super. 516, 63 A.2d 129 (1949) ("abuse" means a physical defilement of the body; no requirement to show bodily injury); *State v. Cunday*, 57 Wash.2d 122, 356 P.2d 609 (1960) ("abuse" only descriptive of effect upon a child under certain age, not of physical harm or injury). *Compare Reynolds v. State*, 274 Ala. 171, 146 So.2d 85 (1962), which punishes:

> Any person who has carnal knowledge of any girl under twelve years of age, *or abuses such girl in the attempt to have carnal knowledge of her....*

Although the case law of our sister states tends to lead us toward the view advanced by appellant at trial, we must recognize that those decisions emanate from statutes dissimilar to the one here at issue. Thus, in seeking to determine the intent of the legislature, we write on a clean slate.

In enacting the statute *sub judice*, we presume that the legislature was aware of the words that it used and that it did not intend "to use words in vain or to leave a part of its enactment without sense or meaning," but intended that every part of the statute should be operative. *Welsh v. Kuntz*, 196 Md. 86, 98, 75 A.2d 343 (1949). A wrongful touching for purposes of sexual arousal or gratification is proscribed in § 461(f), along with wrongful touching "for abuse." The three "purposes" are in the disjunctive. To include the necessity to show sexual arousal or gratification as a requisite of "abuse" would be to require an unnecessary redundancy—to use the words "for abuse" in vain.

Put another way, the words "for abuse" would be inoperative. *See Welsh v. Kuntz, supra.* Were we to follow the argument advanced at trial by appellant's counsel, "abuse" inflicted for the purpose of arousal or gratification having been already proscribed, that word becomes redundant when used a second time in the same sentence of the statute. Obviously, the legislature never intended to use any of its words in vain, and we would consider appellant's (trial) argument to be unavailing.

## II.

■ Appellant next contends that the third degree sexual offense conviction should have merged with the conviction for assault with intent to maim. We disagree.

We look to the "required evidence" test as our beacon light. In *Thomas v. State,* 277 Md. 257, 265, 353 A.2d 240 (1976), Judge Eldridge, speaking for the Court of Appeals, stated in pertinent part:

> As made clear in *Blockburger,* by looking to the evidence required by the statute for conviction, the required evidence test focuses on the elements of each statute. Thus, each statute constitutes a separate offense if each contains a distinct element.

Put another way, the same act or transaction constitutes a violation of two distinct statutory provisions if each requires a proof of fact which the other does not. *Loud v. State,* 63 Md.App. 702, 493 A.2d 1092 (1985). Art. 27, § 386, *Assault with Intent to Maim, Disfigure or Disable,* requires intent to injure but not necessarily a "sexual" injury. *See* n. 1 *supra.* Third degree sex offense, Art. 27, § 464B, however, requires the intent to injure for purpose of a sexual effect, *i.e.,* a sexual injury. Thus, each contains an element or proof of fact which the other does not. Therefore, there would be no merger. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Newton v. State,* 280 Md. 260, 268, 373 A.2d 262 (1977). *See also* Gilbert & Moylan, *Maryland Criminal Law: Practice and Procedure* § 37.6.

### III.

Appellant filed a "Suggestion for Removal" which was denied by the trial judge. Maryland Rule 4–254(b)(2) provides that when, in a non-capital case,

> either party files a suggestion under oath that the party cannot have a fair and impartial trial in the court in which the action is pending, the court shall order that the action be transferred for trial to another court having jurisdiction only if it is satisfied that the suggestion is true or that there is reasonable ground for it.

■ Appellant argues that a series of newspaper articles and excerpts from television broadcasts manifested such extensive publicity that the court should have granted appellant's suggestion for removal.

We disagree. In *Presley v. State,* 224 Md. 550, 555, 168 A.2d 510 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 399, 7 L.Ed.2d 389, the Court of Appeals stated:

> The general rule with respect to alleged prejudice caused by newspaper publicity has been clearly established in this State by the decisions of this Court, which is that the burden is upon the party alleging prejudice to show: (1) that the newspaper article is prejudicial, (2) that a juror has read the prejudicial newspaper article, and (3) that the jurors' decision at the trial was influenced by that newspaper article.

We hold that the trial judge properly denied the suggestion for removal and correctly applied the applicable law, as evidenced by his succinct but articulate memorandum opinion:

> A party moving for a change of venue has the burden of showing he has been prejudiced by adverse publicity and that the voir dire examination of prospective jurors, available to him, would not be adequate to assure him a fair and impartial trial. *Waine v. State,* 37 Md.App. 222 [377 A.2d 509] (1977). Newspaper disclosures, including factual reports of the arrest of an accused, are not in themselves prejudicial. *Bremer v. State,* 18 Md.App. 291

[307 A.2d 503] (1973). Nor are they necessarily prejudicial because they also report the arrest or indictment of another individual who is charged with crimes factually unrelated to the Defendant's case. Moreover, the trial of this case is scheduled over three months after the subject reports appeared. Full and complete voir dire examination of prospective jurors as to the effect, if any, of these news accounts can be pursued by the Defendant.

## IV.

Finally, appellant argues that certain remarks made by the trial judge indicated that he was relying on the number of charges that had been placed against the appellant and not merely the convictions. The record is clear that the trial judge recognized the difference between the charges and convictions, for he at one point stated that:

Well, I'll ... draw my own conclusions as to the nature of the gentleman's criminal record based on the pages that are set forth here, and I can note the distinction between convictions and being charged, so all that will be considered and has been considered by me.

There were no improper sentencing considerations.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.